NO. 26-1193

IN THE IN THE UNITED STATES
COURT OF APPEALS FOR THE FEDERAL CIRCUIT

CHARLES SHAMOON, SR. AND UBIQUITOUS CONNECTIVITY, LP
*Appellants,*

v.

CITY OF SAN ANTONIO, AKA CPS ENERGY, CITY SERVICE BOARD OF SAN
ANTONIO, DBA CPS ENERGY,
*Appellee.*

Appeal from the United States District Court
for the Western District of Texas

## PRINCIPAL BRIEF OF APPELLANTS CHARLES SHAMOON, SR. AND UBIQUITOUS CONNECTIVITY LP

Steven N. Williams
swilliams@munsch.com
Randall W. Miller
rwmiller@munsch.com
Emily C. Means
emeans@munsch.com

MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

# EXAMPLE CLAIM LANGUAGE AT ISSUE

## U.S. Patent No. 9,312,655

## Claim 1:

A base unit configured to communicate with an environmental device and to communicate with a cellular remote unit having wireless connectivity capable of communicating from a geographically remote location, the base unit comprising:

a first communication interface configured to receive environmental information from the environmental device and to send a control instruction to the environmental device;

a wireless communication interface configured to send a first message to the cellular remote unit via a cellular communications network and to receive a second message from the cellular remote unit via the cellular communications network,

wherein the first message is a first digital communications message including a representation of the environmental information, and

wherein the second message is a second digital communications message including a command regarding the environmental device; and

a microcontroller configured to process the second message, to provide the control instruction based on the command, and to send the control instruction to the environmental device via the first communication interface, and

wherein the command is for the base unit initiated by a user from the cellular remote unit, and

wherein the control instruction to the environmental device is associated with the command for the base unit, wherein the cellular remote unit is configured to determine position data of the cellular remote unit, and determine when the cellular remote unit is outside a geo-fence, wherein the cellular remote unit is configured to transmit a

notification via a simple message service responsive to determining that the cellular remote unit is outside of the geo-fence.

## Claim 2:

**The base unit of claim 1, wherein the command regards entering an emergency conservation mode, and wherein the energy conservation mode is associated with multiple environmental devices.**

## Claim 9

**The base unit of claim 1, wherein the command is an energy conservation command associated with multiple environmental devices.**

## Claim 11:

The base unit of claim 10, wherein the cellular communications network includes a data bearer service;

wherein the remote unit is a mobile remote unit;

wherein the control instruction includes an environmental control instruction; and wherein the command includes an environmental command.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2026-1193 |
| **Short Case Caption** | Shamoon v. City of San Antonio |
| **Filing Party/Entity** | Ubiquitous Connectivity, LP |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: __12/05/2025__

Signature: __/s/ Steven N. Williams__

Name: __Steven N. Williams__

| 1. Represented Entities.<br>Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest.<br>Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders.<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Ubiquitous Connectivity, LP | Charles Shamoon | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

iv

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| (Alexander) Wyatt Wright<br>WAYNE WRIGHT LLP | Travis E. Lynch<br>HENINGER GARRISON DAVIS, LLC | |
| James F. McDonough, III<br>HENINGER GARRISON DAVIS, LLC | | |
| Jonathan R. Miller<br>HENINGER GARRISON DAVIS, LLC | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐  Yes (file separate notice; see below)    ☑  No    ☐  N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑  None/Not Applicable          ☐  Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. Oral argument would assist the Court in addressing the legal and procedural issues presented on appeal.

# TABLE OF CONTENTS

**Page**

**JURISDICTIONAL STATEMENT** ....................................................1

**STATEMENT OF THE ISSUES**.....................................................2

**STATEMENT OF THE CASE** .......................................................3

**SUMMARY OF THE ARGUMENT** ................................................10

**STANDARD OF REVIEW**...........................................................12

**ARGUMENT AND AUTHORITIES**................................................13

    I.    The District Court Erred in Granting CPS Energy's
Rule 12(b)(6) Motion to Dismiss ...........................................13

        A.    Governing Pleading Standards for Patent
Infringement ...............................................................13

        B.    The SAC Sufficiently Pleaded Direct and Indirect
Patent Infringement. ...................................................16

    II.    The District Court Abused Its Discretion by Denying
Leave to Amend and Dismissing the Case With
Prejudice..............................................................................27

        A.    Amendment Would Not Have Been Futile..................27

        B.    The District Court's Procedural Grounds Do Not
Justify Dismissal With Prejudice ...............................29

**CONCLUSION**.........................................................................31

**CERTIFICATE OF COMPLIANCE**...............................................33

**CERTIFICATE OF SERVICE** ......................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adnexus Inc. v. Meta Platforms, Inc.*,
  160 F.4th 1216 (Fed. Cir. 2025)................................................ *passim*

*AlexSam, Inc. v. Aetna, Inc.*,
  119 F.4th 27 (Fed. Cir. 2024).............................................. 14

*Aschroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................... 13

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
  713 F.3d 1090 (Fed. Cir. 2013) ........................................ 23

*Bot M8 LLC, v. Sony Corporation of America, et al.*,
  4 F.4th 1342 (Fed. Cir. 2021)........................................... 14

*CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*,
  916 F.3d 1350 (Fed. Cir. 2019) ........................................ 23

*Crosby v. Hairel*,
  673 F. App'x 397 (5th Cir. 2016)...................................... 12

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
  888 F.3d 1256 (Fed. Cir. 2018) ........................................ 14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  344 F.3d 1359 (Fed. Cir. 2003) ........................................ 22

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
  535 U.S. 722 (2002)........................................................... 22

*Foman v. Davis*,
  371 U.S. 178 (1962)........................................................... 27

*Franklin v. United States*,
  49 F.4th 429 (5th Cir. 2022) ............................................ 12

*Lifetime Ind., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) ........................................... 15

*Nalco Company, v. Chem-Mod, LLC et al.*,
  883 F.3d. 1337 (Fed. Cir. 2018) ....................................... 14, 15, 21, 26

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ........................................... 21

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) ........................................... 22

*Porretto v. City of Galveston Park Bd. of Trustees*,
  113 F.4th 469 (5th Cir. 2024) ........................................... 13

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
  65 F.4th 698 (Fed. Cir. 2023) ........................................... 12

*Sherrod v. United Way Worldwide*,
  821 Fed. Appx. 311 (5th Cir. 2020) ........................................... 13

*UTTO Inc. v. Metrotech Corp.*,
  119 F.4th 984 (Fed. Cir. 2024) ........................................... 13

*Webb v. Morella*,
  457 F. App'x. 448 (5th Cir. 2012) ........................................... 30

**Statutes**

28 U.S.C. § 1295(a)(1) ........................................... 1

35 U.S.C. § 271 ........................................... 17

**Other Authorities**

Western District of Texas Local Rule CV-7(b) ........................................... 30

Federal Rule of Civil Procedure 12(b)(6) ........................................ *passim*

Federal Rule of Civil Procedure 15(a) ........................................... 11, 27, 28

Federal Rule of Civil Procedure 56 ........................................... 23, 24

Federal Rule of Civil Procedure 59 .................................................... 9, 28

x

## JURISDICTIONAL STATEMENT

The United States District Court for the Western District of Texas issued its Final Judgment on April 30, 2025 and its Order Denying Appellants' Rule 59 Motion on October 14, 2025. Appx. 00014; Appx. 00015. Appellants timely filed their notice of appeal on November 10, 2025. Appx. 00665. This Court has jurisdiction over the claims on appeal pursuant to 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1.  Whether the District Court erred in granting Appellees' Rule
    12(b)(6) motion to dismiss where Appellants' Second Amended
    Complaint sufficiently alleged a plausible cause of action for
    patent infringement, including direct infringement and
    infringement under the doctrine of equivalents, as well as
    indirect infringement through inducement or contributory
    infringement, and provided fair notice of the claims asserted?

2.  Whether the District Court abused its discretion by denying
    Appellants leave to amend the Second Amended Complaint
    ("SAC") and dismissing their claims with prejudice when it
    had acknowledged that even as pled, the SAC stated, or
    conceivable stated all the elements necessary to support a
    claim for patent infringement?

## STATEMENT OF THE CASE

This appeal arises from the District Court's decision dismissing with prejudice Appellants' patent-infringement action at the pleading stage, and denying Appellants' the opportunity to amend their complaint further.

Appellants Charles G. Shamoon and Ubiquitous Connectivity, LP (collectively, "UC" or "Appellants") originally filed this action alleging that the "Total Connect Comfort" and "Home Manager" systems sold by Appellees City of Antonio by and through its agent, City Public Service Board of San Antonio d/b/a/ CPS Energy's (collectively, "CPS Energy" or "Appellees") infringe U.S. Patent No. 9,312,655 (the " '655 Patent").[1] *See generally* Appx. 00140.

CPS Energy, together with its product vendor and indemnitor, Resideo, filed *inter partes* review ("IPR") proceedings challenging the validity of the patents originally asserted by UC. While striking down a number of the claims of the '655 Patent as unpatentable, the Patent Trial

---

[1] Appellants originally asserted claims for infringement of another patent, U,S. Patent No. 8,064,935 (the " '935 Patent") as well as infringement of claims of the '655 Patent.

and Appeal Board ("PTAB") concluded that CPS Energy failed to prove

that dependent claims 2, 9, and 11 of the '655 Patent were unpatentable.

Following the conclusion of UC's appeal to the Federal Circuit of the IPR

decisions, UC filed the SAC in which it narrowed the claims originally

asserted against CPS Energy, to assert infringement only on dependent

claims 2, 9 and 11 of the '655 Patent. *See* Appx. 00145.

The '655 Patent relates to systems and methods for monitoring and

controlling remotely environmental devices using wireless

communication and user-initiated commands. Appx. 00142; Appx.

00679. Specifically, the three surviving dependent claims state:

> 2. The base unit of claim 1, wherein the command regards entering an energy conservation mode, and wherein the energy conservation mode is associated with multiple environmental devices.

> 9. The base unit of claim 1, wherein the command is an energy conservation command associated with multiple environmental devices.

> 11. The base unit of claim 10,[2] wherein the second message includes an energy conservation command associated with multiple environmental devices.

---

[2] Dependent claim 11 is based on both independent claim 1, and dependent claim 10, which states:

4

*See* Appx. 00667.

In its SAC, UC identified the products accused of infringing the claims of the '655 Patent as "including by not limited to [CPS Energy's] 'Total Connect Comfort' and 'Home Manager' branded systems" ("Accused Products").  Appx. 00147.  The SAC further alleges:

- CPS Energy's Accused Products enable users to receive notifications and transmit control instructions to environmental devices.  Appx. 00147–00149.

- The Accused Products "satisfy each and every limitation of one or more claims of the '655 Patent."  Appx. 00147; Appx. 00151.

- The Accused Products allow users (1) to change the settings of their smart thermostats from their mobile devices; (2) to set heating and cooling schedules for the smart thermostats from their mobile

---

The base unit of claim 1, wherein the cellular communications network includes a data bearer service;

wherein the remote unit is a mobile remote unit;

wherein the control instruction includes an environmental control instruction; and wherein the command includes an environmental command.

devices; (3) provides users with usage data related to the smart thermostats system; and (4) to utilize geoservices to operate the system based on location. Appx. 00150.

- The Accused Products included a feature known as geo-fencing, which uses the GPS location on a user's mobile to set location-based triggered events. Appx. 00150.

- The Accused Products enabled thermostat devices to receive current room temperature readings and send control instructions, *i.e.* increasing or decreasing room temperature, to the user's HVAC system. Appx. 00150–00151.

- CPS Energy provided guidance to its prospective customers through documents that educated users about the benefits of the Accused Products, and how to choose the right system for a customer's particular requirements. Appx. 00151.

- In addition to infringing the '655 Patent directly, CPS Energy also induces others to infringe, and contributes to others' infringement of the '655 Patent. Appx. 00151–00153.

After UC filed the SAC, CPS Energy moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). CPS Energy argued that the

SAC failed to specify facts supporting alleged infringement of multiple elements of claim 1, including "'base unit'; 'environmental device'; 'command'; 'control instruction'; and 'wherein the cellular remote unit is configured to transmit a notification **via a simple message service** responsive to determining that the cellular remote unit is outside of the geo-fence' [hereinafter, 'the SMS limitation,']." (Emphasis in original.). *See* Appx. 00177.

CPS Energy focused most of its argument on the "SMS limitation," arguing at length how UC had conceded previously that the term "simple message service" as used in claim 1 was actually a typographical error and should have been "short message service," the conventional meaning of the abbreviated term "SMS." *See* Appx. 00183–00185.

UC opposed the motion, arguing that the SAC plausibly alleged infringement of the asserted claims. UC specifically disputed CPS Energy's arguments regarding the SMS limitation of claim 1, pointing out that while CPS Energy had urged to the District Court that UC could not prove infringement of the SMS limitation, plaintiffs are not required to prove infringement at the pleading stage. Appx. 00525. Further, UC explained that the SAC alleged both literal infringement and

infringement under the doctrine of equivalents. "As such, UC does not have to plead use of short message service because UC has plead an unchallenged alternative infringement theory that the accused products use an equivalent to short message service." *Id*.

Finally, to the extent the District Court determined that any allegations in the SAC required more specificity, UC requested "an opportunity to amend its complaint to provide additional information, or at a minimum, to incorporate its infringement contentions by reference once those are submitted." Appx. 00528.

The District Court granted CPS Energy's motion and dismissed the case with prejudice. *See* Appx. 00001. The Court acknowledged that UC's allegations plausibly satisfied multiple claim limitations and "could conceivably" satisfy the remaining messaging limitation. While that should have been the end of the inquiry, the Court then concluded that the SAC failed to plead sufficient facts regarding "simple message service." *See* Appx. 00008. Further, based on CPS Energy's characterization of the prosecution history of the '655 Patent, the Court held that UC could not rely on the doctrine of equivalents with respect to the "simple message service" claim limitation. Appx. 00010.

8

Almost in passing, the District Court further dismissed UC's claims for indirect infringement because inducement and contributory infringement "require that direct infringement be satisfied . . ." Appx. 00011.

The District Court denied UC leave to amend, reasoning that UC had already had time to plead its "best case" and had not sufficiently previewed additional factual detail. Appx. 00012. The District Court also cited UC's failure to attach a proposed amended complaint under a local rule governing motions for leave. *Id.*

UC filed a Motion to Alter or Amend Judgment under Rule 59(e), urging the District Court to vacate its Final Judgment. UC argued that the position taken by CPS Energy in the Motion to Dismiss improperly narrowed the scope of the claims of the '655 Patent. UC further argued it was not barred from relying on the doctrine of equivalents to assert a claim for infringement. Finally, UC argued the SAC properly pled a claim for direct infringement. The District Court denied UC's motion. *See* Appx. 00015.

UC timely appealed. *See* Appx. 00665.

## SUMMARY OF THE ARGUMENT

The District Court's dismissal should be reversed for two independent reasons.

First, the District Court erred in granting CPS Energy's Rule 12(b)(6) motion. At the pleading stage, the question is not whether UC will ultimately prevail, but whether the SAC plausibly alleges a legally cognizable claim. The SAC satisfies that standard. It identifies the asserted patent, the Accused Products, and how those products operate to infringe the claimed system. The SAC plausibly alleges direct and literal infringement, expressly alleges infringement under the doctrine of equivalents, and sufficiently alleges indirect infringement through inducement and contributory infringement. The District Court acknowledged that UC plausibly alleged multiple claim limitations and that the pleaded facts "could conceivably" satisfy the remaining limitation, yet dismissed the case and foreclosed any reliance on the doctrine of equivalents as a matter of law. The District Court misapplied the pleading standards required for a patent infringement claim to survive a challenge under Rule 12(b)(6).

Second, even if the District Court believed additional factual details were required, it abused its discretion by denying UC leave to amend and dismissing the case with prejudice. Rule 15(a) mandates that leave to amend be freely given when justice so requires. The District Court did not find that amendment was incapable of curing any supposed deficiencies. To the contrary, it determined that UC had plausibly alleged multiple claim limitations, and the facts pled in the SAC "could conceivably" satisfy the remaining limitations. Appx. 00012. The District Court then reasoned that UC had failed to plead its "best case"— a conclusion that presupposes additional facts could be pleaded if amendment were allowed. The record confirms that amendment would not have been futile, as UC presented additional explanation and argument regarding infringement under the doctrine of equivalents in post-dismissal briefing. Appx. 00555.

The District Court's reliance on procedural grounds, including an asserted failure by UC to comply with a local rule governing motions for leave to amend, does not justify dismissal with prejudice. Because UC plausibly stated a claim and because, if necessary, further amendment

would not have been futile, the Court should reverse the judgment and remand this case to the District Court.

## STANDARD OF REVIEW

The Court reviews a district court's grant of a Rule 12(b)(6) motion to dismiss under the law of the applicable regional circuit. *Adnexus Inc. v. Meta Platforms, Inc.*, 160 F.4th 1216, 1220 (Fed. Cir. 2025). The Fifth Circuit reviews the grant of a motion to dismiss de novo. *Id.*; *see also, Franklin v. United States*, 49 F.4th 429, 435 (5th Cir. 2022). The court must liberally construe all allegations in the complaint, accept all well-pleaded factual allegation as true, and draw all reasonable inferences in the light most favorable to the Plaintiff. *Adnexus*, 160 F.4th at 1220.

Conversely, a district court's decision to dismiss a case with prejudice or to deny leave to amend is reviewed for abuse of discretion. *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 702 (Fed. Cir. 2023) (holding that the Federal Circuit reviews a district court's denial for leave to amend or dismissal under the standard applied by the regional circuit); *see also Crosby v. Hairel*, 673 F. App'x 397, 400 (5th Cir. 2016) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 215 n.34 (5th Cir. 2009));

*Porretto v. City of Galveston Park Bd. of Trustees,* 113 F.4th 469, 491 (5th Cir. 2024).

## ARGUMENT AND AUTHORITIES

## I.    The District Court Erred in Granting CPS Energy's Rule 12(b)(6) Motion to Dismiss

### A.    Governing Pleading Standards for Patent Infringement

On appeal from a Rule 12(b)(6) dismissal, the Court is "not concerned with whether the plaintiff was likely to succeed on the claims but only whether the complaint contains any legally cognizable claims that are plausible." *Sherrod v. United Way Worldwide*, 821 Fed. Appx. 311, 315 (5th Cir. 2020); *see also UTTO Inc. v. Metrotech Corp.,* 119 F.4th 984, 992 (Fed. Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) ("The plausibility standard 'does not impose a probability requirement at the pleading stage[.]'")).

To survive a motion to dismiss, a complaint must state a claim from relief that is at least plausible. *Adnexus*, 160 F.4th at 1220. *See also, Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Federal Circuit draws on its own law to the specific question of whether a complaint states a

13

plausible claim for patent infringement. *See Adnexus*, 16 F.4th at 1221; *see also, AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir. 2024).

A plaintiff in a patent infringement case is not required to plead its claims of patent infringement on an element-by-element basis. *See Nalco Company, v. Chem-Mod, LLC et al.*, 883 F.3d. 1337, 1350 (Fed. Cir. 2018) ("[T]he Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.") (citation omitted). All that is required is that the complaint place the alleged infringer on notice of the activity being accused of infringement. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." *Bot M8 LLC, v. Sony Corporation of America, et al.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks and citation omitted)). The Federal Circuit thus applies "a flexible inquiry into whether the factual allegations in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* at 1352.

Consistent with these principles, where a plaintiff plausibly alleges literal infringement, general allegations of infringement under the doctrine of equivalents likewise suffice. *See e.g.*, *Adnexus*, 160 F.4th at 1223–24; *Nalco*, 883 F.3d at 1353–54. Rule 12 does not require a plaintiff to *prove* equivalence or to plead detailed evidence supporting that theory.

Finally, a complaint alleging indirect infringement through inducement must plead facts plausibly showing that the accused infringer "specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Lifetime Ind., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1321, 1339 (Fed. Cir. 2012)) (alterations in original). Likewise, contributory infringement occurs when a party sells "a component of a patented . . . combination . . . constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." *Lifetime Ind.*, 869 F.3d at 1381 (quoting 35 U.S.C. § 271(c)) (alterations in original).

15

### B.    The SAC Sufficiently Pleaded Direct and Indirect Patent Infringement.

#### 1.    The SAC sufficiently alleges direct literal infringement.

UC's SAC satisfies the governing pleading standards and plausibly alleges a claim for direct infringement of claims 2, 9 and 11 of the '655 Patent.  The SAC identifies the asserted patent, the Accused Products, and the manner in which those products operate so as to infringe the claimed system, thereby providing CPS Energy with fair notice of the claims asserted against it.

CPS Energy argued that UC's infringement allegations were deficient because the SAC did not plead how the Accused Products could satisfy the "simple message service" ("SMS") limitation found in independent claim 1.  However, any fair reading of the SAC reveals it sufficiently pleads direct and literal infringement.  The SAC identifies specific accused systems—CPS Energy's "Total Connect Comfort" and "Home Manager" products—and alleges that CPS Energy makes, uses, offers to sell, and provides those systems to its customers.  Appx. 00147.  Further, it describes how the accused systems enable users to monitor and control environmental devices remotely through two-way wireless

16

communication and user-initiated commands. *See* Appx. 00148–00149. The SAC also alleges that the Accused Products satisfy all limitations of at least the asserted claims and directly infringe the '655 Patent under 35 U.S.C. § 271. *See* Appx. 00151. These allegations are more than sufficient at the pleading stage to allege a plausible claim of direct and literal infringement. *See Adnexus*, 160 F.4th at 1221 ("A plaintiff is not required to plead infringement on an element-by-element basis. Instead, it is enough that a complaint places the alleged infringer on notice of what activity is being accused of infringement.") (citations omitted). The District Court expressly found that the SAC plausibly alleged multiple claim limitations and that the pleaded facts "could conceivably" satisfy the remaining messaging limitation. Appx. 00001. Having concluded that the SAC plausibly alleged the relevant claim limitations, the District Court should have ended its inquiry there and denied CPS Energy's Motion to Dismiss.

The District Court, however, appears to have misinterpreted the role of the SMS limitation claim 1 of the '655 Patent. The District Court stated "a key element of Claim 1 is that the communication between the remote unit and the base unit is 'transmit[ted] via a simple message

17

service.' . . . Accordingly, the 'simple message service' element in claim 1 requires the two-way communication between the base and remote unit to be accomplished by 'SMS.'" Appx. 00007–00008. The District Court further compounded its misunderstanding of the elements of claim 1 and the allegations of the SAC when it determined that the SAC "says nothing about the use of 'SMS' to transmit the controls, only that the method of 'control' is accomplished by way of communication between the devices. . . . [P]lausibly alleging infringement of this element requires factual allegation pointed to the SMS Limitation itself. Plaintiff's allegation that the Accused Products allow remote control merely 'identif[ies] the allegedly infringing products . . . absent any factual support. Plaintiffs fail to provide factual support for how the Accused Products infringe on the SMS Limitation, which is required here as 'the technology is not simple and the limitations-at-issue are material.'" Appx. 00008–00009.

Contrary to the apparent understanding of the District Court, the SMS limitation in Claim 1 is limited only to transmitting "a notification via a simple message service responsive to determining that the cellular unit is outside the geo-fence." Appx. 00679. In short, the SMS Limitation

only relates to sending out a notice when the cellular unit has gone outside the area defined by a geo-fence. This has nothing to do with communication between the remote unit and the base unit, nor with transmitting controls between the devices. Moreover, the District Court is simply mistaken in understanding that claim 1 "requires the two-way communication between the base unit and remote unit to by accomplished by 'SMS.'" Appx. 00008. Indeed, claim 1 of the '655 Patent speaks of a base unit configured to receive environmental information and to send control instructions, together with a microcontroller configured "to provide the control instruction based on the command, and to send the control instruction to the environmental device via the first communication interface." *See* Appx. 00667 at Col 13, line 57 through Col. 14, line 15. The SAC sufficiently pleads these elements by alleging that the Accused Products allow users "(1) to change the setting of their smart thermostats from their mobile devices; (2) to set heating and cooling schedules for the smart thermostats from their mobile devices; (3) provides user with usage data related to the smart thermostats system; and (4) to utilize geoservices to operate the system based on location." Appx. 00150.

19

In addition, the SAC alleges that the Accused Products allow users "to utilize geoservices to operate the system based on location," and "include a feature known as geo-fencing, which uses the GPS location on a user's mobile to set location-based triggered events." Appx. 00150. A reasonable inference to be drawn from the facts alleged in the SAC is that geo-fencing feature transmits a notification that the cellular remote unit is outside the geo-fence. Further, while the SAC does not allege the specific protocol that may be used to transmit a notification that the cellular remote is outside the geo-fence, one can reasonably infer that such a notification would be transmitted by SMS. When the SMS Limitation found in claim 1 of the '655 Patent is placed in the proper context (*i.e.*, as relating merely to transmitting a notification that the remote unit is outside the geo-fence), it is clear that the SAC sufficiently alleges facts giving rise to a claim of direct and literal infringement of the asserted claims.

### 2. Alternatively, the SAC sufficiently alleges infringement under the doctrine of equivalents.

Even if the District Court had any lingering doubts as to whether the SAC sufficiently alleges literal infringement of the asserted claims of

the '655 Patent, the SAC also sufficiently pleads infringement under the doctrine of equivalents. The SAC expressly alleges that the Accused Products infringe the asserted claims both "direct and indirect, literally and/or through the doctrine of equivalents[.]" Appx. 00154. Again, these allegations are sufficient to place CPS Energy on notice that UC alleges infringement under both literal and equivalent theories. *See Adnexus,* 160 F.4th at 1223–24; *Nalco*, 883 F.3d at 1353–54.

Rather than assessing whether the pleaded facts plausibly supported infringement under the doctrine of equivalents, the District Court foreclosed that theory altogether based on CPS Energy's representations of the '655 Patent's prosecution history. *See* Appx. 00010.

The District Court erred in concluding that prosecution estoppel would bar UC from relying on the doctrine of equivalents to assert infringement of the SMS limitation found in Claim 1. In specific instances, prosecution history estoppel can operate to preclude a patent holder from relying on the doctrine of equivalents. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1363 (Fed. Cir. 2008) ("[W]hen a patent claim is narrowed during prosecution, prosecution

history estoppel may limit application of the doctrine of equivalents.")
(citing *Int'l Rectifier Corp. v. IXYS Corp.,* 515 F.3d 1353, 1358 (Fed. Cir.
2008)).  A presumption of "[e]stoppel arises when an amendment is made
to secure the patent and the amendment narrows the patent's
scope." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535
U.S. 722, 736 (2002).  To preclude reliance on the doctrine of equivalents,
the accused infringer bears the burden of showing that the amendment
was narrowing.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki
Co.*, 344 F.3d 1359, 1366 (Fed. Cir. 2003).  If the accused infringer
establishes that the amendment was a narrowing amendment, then the
burden shifts to the patent owner to show that prosecution history
estoppel does not apply by establishing that the amendment was not for
patentability.  *See id.* at 1367.  Prosecution disclaimer "preclud[es]
patentees from recapturing through claim interpretation specific
meanings disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek
Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).  "[F]or prosecution disclaimer
to attach, [Federal Circuit] precedent requires that the alleged
disavowing actions or statements made during prosecution be both clear
and unmistakable." *Id.* at 1325–26.  "Thus, when the patentee

22

unequivocally and unambiguously disavows a certain meaning to obtain a patent, the doctrine of prosecution history disclaimer narrows the meaning of the claim consistent with the scope of the claim surrendered." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013) (citing *Omega Eng'g*, 334 F.3d at 1324).

CPS Energy did not show prosecution history estoppel arising from amendments made by UC during the prosecution of the '655 Patent. Rather, during the course of the IPR proceeding, UC simply acknowledged that the term "simple message service," as it appears in Claim 1, was a typographical error that should been "short message system" (*i.e.,* SMS). Appx. 00008. At no point has CPS Energy attempted to offer evidence to show that UC intended that clarification to be a clear and unambiguous surrender of subject matter to the public. Further, any attempt by CPS Energy to make such a showing would have required the District Court to treat its motion as one for summary judgement under Rule 56 rather than a motion to dismiss under Rule 12(b)(6). *See CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1360 (Fed. Cir. 2019) ("If a court does consider material outside the pleadings, the motion to dismiss must be treated as a motion for summary judgment

under Rule 56 and all parties must be given a reasonable opportunity to present all material pertinent to the motion.") (citations omitted).

Taken as a whole, the SAC plausibly alleges patent infringement under both literal and doctrine of equivalents theories and provides CPS Energy with fair notice of the claims asserted. Because the SAC on its face meets the pleading requirements for stating a claim of direct infringement, the order granting the Rule 12(b)(6) motion to dismiss should be reversed.

### 3. The SAC sufficiently alleges indirect infringement.

In addition to alleging a cause of action for direct infringement, the SAC also sufficiently alleges facts to support a claim for indirect infringement through inducement as well as contributory infringement. For example, the SAC alleges that "CPS Energy also induces infringement of the '655 Patent by knowingly taking affirmative acts through promotion of the Accused Products, including but not limited to inducing others to make, use, sell, and/or offer for sale the Accused Products, . . . and/or by instructing others to combine the Accused Products with other devices in order to create and use one or more of the systems described in Claims 2, 9 and 11 of the '655 Patent." Appx. 00151.

24

Further, the SAC alleges that CPS Energy continued to encourage or cause its customers to use the Accused Products in ways that would infringe the '655 Patent, even after it had knowledge of the patent. Appx. 00152. Additionally, the SAC alleges that "CPS Energy specifically intends its customers to use its products and services in such a way that infringes the '655 Patent . . ." *Id.*

The SAC also specifically alleges that CPS Energy contributorily infringes the '655 Patent, knowing that the Accused Products are "especially made or especially adapted for practicing one or more of the inventions claimed in the '655 Patent." Further, the SAC alleges the Accused Products "are not staple articles or commodities suitable for substantial non-infringing use." Appx. 00153. Finally, the SAC alleges that the Accused Products have no substantial, non-infringing uses, can only be used in a manner that infringes in the '655 Patent, and that CPS Energy acted without authority or license from UC. *Id.*

In dismissing UC's indirect infringement claims, the District Court did not dispute that UC adequately pled the necessary elements for both inducement and contributory infringement. Rather, it simply reasoned that UC's claims for indirect infringement require that direct

25

infringement be satisfied, and thus dismissed those claims as well. Appx. 00011. The flaws with the District Court's reasoning are two-fold. First, as shown above, the SAC more than sufficiently pleads a claim for direct infringement. Therefore, according to the District Court's reasoning, UC's indirect infringement claims must also survive the Rule 12(b)(6) motion to dismiss. Second, UC is required only to plead facts to support its claims for indirect infringement, not prove those facts at the pleading stage. *See Nalco*, 883 F.3d at 1350. The SAC alleges that the Accused Products "embody one or more of the inventions of Claims 2, 9, and 11 of the '655 Patent," and that the Accused Products can be combined with other devices "to create and use one or more of the systems described in Claims 2, 9, and 11 of the '655 Patent." Appx. 00151. The SAC further alleges that CPS Energy specifically intended its customers to use its products and services in such a way that infringe the '655 Patent, and it instructed its customers on how to use the products in an infringing manner. Appx. 00152.

Finally, the SAC alleges that the Accused Products "can only be used in a manner that infringes the '655 Patent and have been used by CPS Energy's customers in a manner that directly infringes one or more

26

claims of the '655 Patent." Appx. 00153. As such, separate and apart from UC's allegations concerning direct infringement, the SAC sufficiently alleges claims for indirect infringement through inducement and/or contributory infringement.

## II.    The District Court Abused Its Discretion by Denying Leave to Amend and Dismissing the Case With Prejudice

### A.    Amendment Would Not Have Been Futile

The District Court abused its discretion by denying UC leave to amend on the ground that any amendment would be futile. Rule 15(a) sets a liberal standard for amendment, providing that leave to amend "shall be freely given when justice so requires," and that mandate "is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). As the Supreme Court explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.

*Id.* None of these "apparent or declared reason[s]" are present here.

The District Court conceded that UC's allegations "could conceivably" satisfy the disputed "simple message service" limitation,

while faulting the SAC for lacking additional detail.  Appx. 00008.  This acknowledgment confirms that amendment could be capable of curing any perceived deficiency.  The District Court did not find that *no* set of additional facts could state a claim; instead, it concluded (incorrectly) that UC had not sufficiently previewed those facts to the Court's satisfaction.

Indeed, when addressing futility, the District Court reasoned that amendment would be futile because UC did not hint at any other explanation for how the Accused Products infringe on the SMS Limitation, and had not explained "how further investigation into the Accused Products could unearth this evidence." Appx. 00012.  That is not a determination that amendment could never state a claim.  It is a conclusion that UC should not be permitted to add detail after the Court identified what it perceived as a deficiency—precisely the circumstance in which Rule 15(a)'s liberal amendment standard applies.

The record confirms that amendment would not have been futile. UC presented additional explanation and argument regarding the doctrine of equivalents in its Rule 59 motion, including why the prosecution-history-based narrowing was being applied too rigidly at the

28

pleading stage and why the accused systems plausibly operated through equivalent digital messaging mechanisms.    Appx. 00564–00567. Further, UC expressly told the District Court that it would incorporate its upcoming infringement contentions to provide more specificity if the District Court would permit it to amend its complaint.

The District Court denied leave to amend, in part because UC "had over a year to search for factual support before filing the SAC, and failure to plead their 'best case' at this stage weighs against allowing another opportunity to correct their deficiencies." Appx. 00012.  This reasoning does not support a finding of futility.  To the contrary, the Court's stated rationale that UC had failed to plead its "best case," presupposes the existence of additional factual material that could be pleaded if leave were granted.

The District Court abused its discretion by denying UC the opportunity to amend.

## B.    The District Court's Procedural Grounds Do Not Justify Dismissal With Prejudice

The District Court also relied on procedural grounds to deny leave to amend, stating that UC had not attached a proposed amended

29

complaint as required by Local Rule CV-7(b).  *See* Appx.00012.  That reliance was misplaced.

Western District of Texas Local Rule CV-7(b) provides that "[w]hen a motion for leave to file a pleading, motion, or other submission is required, an executed copy of the proposed pleading, motion, or other submission shall be filed as an exhibit to the motion for leave." W.D. Tex. Local Rule CV-7(b).  UC did not file a standalone motion for leave to amend; instead, it requested leave to amend in its briefing opposing the Rule 12(b)(6) motion.  The local rule does not clearly govern requests for leave to amend raised in opposition to a motion to dismiss.  Indeed, this issue was raised *sua sponte* by the District Court rather than by CPS Energy.

Treating an ambiguous local procedural rule as dispositive and using it to foreclose amendment and dismiss the case with prejudice, was error.  Courts have recognized that non-compliance with a local rule does not justify dismissal with prejudice, particularly where dismissal functions as a sanction rather than a merits determination.  *See e.g.*, *Webb v. Morella*, 457 F. App'x. 448, 454 n.5 (5th Cir. 2012) ("Because the 12(b)(6) motion was not dismissed on the merits but, instead, for failure

to comply with local rules, we have treated the dismissal of the complaint with prejudice as a sanction and have held that it is an improper sanction under the circumstances.").

Here, the procedural grounds cited by the District Court do not justify denying UC any opportunity to amend, particularly where amendment would not have been futile and where the perceived deficiency was identified for the first time in the dismissal order. For these reasons, the District Court abused its discretion by denying leave to amend and dismissing the case with prejudice.

## CONCLUSION

For the foregoing reasons, UC respectfully requests the Court reverse and vacate the District Court's Order granting CPS Energy's Rule 12(b)(6) motion and dismissing the case with prejudice. Alternatively, UC requests the Court reverse the District Court's denial of leave to amend, and remand this case to the District Court to permit UC to amend its complaint further.

31

Dated: January 20, 2026.

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Steven N. Williams*
    Steven N. Williams
    Randall W. Miller
    Emily C. Means
    Munsch Hardt Kopf & Harr, P.C.
    500 N. Akard Street, Suite 40000
    Dallas, Texas 75201
    Telephone: (214) 855-7500

**COUNSEL FOR CHARLES SHAMOON, SR. AND UBIQUITOUS CONNECTIVITY, LP**

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume requirements of FED. CIR. R. 32(b)(1) because it contains 5,681 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f) and FED. CIR. R. 32(b)(2).

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point font, Century Schoolbook type style, including footnotes.

*/s/ Steven N. Williams*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 20, 2026, a true and correct copy of the foregoing was filed with the electronic case filing (ECF) system of the U.S. Court of Appeals for the Federal Circuit, which currently provides electronic service on the counsel of record.

*/s/ Steven N. Williams*