**2026-1193**

# United States Court of Appeals for the Federal Circuit

CHARLES SHAMOON, SR., UBIQUITOUS CONNECTIVITY, LP,

*Plaintiffs-Appellants,*

– v. –

CITY OF SAN ANTONIO, aka CPS Energy,
CITY SERVICE BOARD OF SAN ANTONIO, dba CPS Energy,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the Western District of Texas in No. 5:18-cv-00718-XR, Xavier Rodriguez, Judge*

## BRIEF FOR DEFENDANTS-APPELLEES

BRADY COX
ALSTON & BIRD LLP
Dallas Arts Tower
2200 Ross Avenue, Suite 2300
Dallas, Texas 75201
(214) 922-3400
brady.cox@alston.com

KIRK T. BRADLEY
S. BENJAMIN PLEUNE
NICHOLAS C. MARAIS
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, North Carolina 28203
(704) 444-1000
kirk.bradley@alston.com
ben.pleune@alston.com
nic.marais@alston.com

*Counsel for Defendants-Appellees*

APRIL 1, 2026

## CLAIMS AT ISSUE

### U.S. Patent No. 9,602,655

Claim 1 (emphasis added):

> A base unit configured to communicate with an environmental device and to communicate with a cellular remote unit having wireless connectivity capable of communicating from a geographically remote location, the base unit comprising:
>
> a first communication interface configured to receive environmental information from the environmental device and to send a control instruction to the environmental device;
>
> a wireless communication interface configured to send a first message to the cellular remote unit via a cellular communications network and to receive a second message from the cellular remote unit via the cellular communications network,
>
> wherein the first message is a first digital communications message including a representation of the environmental information, and
>
> wherein the second message is a second digital communications message including a command regarding the environmental device; and
>
> a microcontroller configured to process the second message, to provide the control instruction based on the command, and to send the control instruction to the environmental device via the first communication interface, and
>
> wherein the command is for the base unit initiated by a user from the cellular remote unit, and
>
> wherein the control instruction to the environmental device is associated with the command for the base unit, wherein the cellular remote unit is configured to determine position data of the cellular remote unit, and determine when the cellular remote unit is outside a geo-fence, *wherein the cellular remote unit is configured to transmit a notification via a simple message service responsive to determining that the cellular remote unit is outside of the geo-fence*.

Claim 2:

The base unit of claim 1, wherein the command regards entering an energy conservation mode, and wherein the energy conservation mode is associated with multiple environmental devices.

Claim 9:

The base unit of claim 1, wherein the command is an energy conservation command associated with multiple environmental devices.

Claim 10:

The base unit of claim 1,

wherein the cellular communications network includes a data bearer service;

wherein the remote unit is a mobile remote unit;

wherein the control instruction includes an environmental control instruction; and

wherein the command includes an environmental command.

Claim 11:

The base unit of claim 10, wherein the second message includes an energy conservation command associated with multiple environmental devices.

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2026-1193

**Short Case Caption** Shamoon v. City of San Antonio

**Filing Party/Entity** City of San Antonio aka CPS Energy, City Service Board of San Antonio, dba CPS Energy

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/05/2025

Signature: /s/ Kirk T. Bradley

Name: Kirk T. Bradley

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| City of San Antonio, aka CPS Energy | | |
| City Service Board of San Antonio, dba CPS Energy | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| David Brandon Conrad | Rodeen Talebi | |
| Neil J. McNabnay | Fish & Richardson P.C. | |
| Ricardo Joel Bonilla | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ........ xi

STATEMENT OF THE ISSUES ........ 1

STATEMENT OF THE CASE ........ 2

I. The Parties. ........ 3

II. Factual Background. ........ 4

A. The Prosecution of the ’655 Patent and the Origin of the SMS Limitation. ........ 4

B. Ubiquitous’ Original and First Amended Complaints. ........ 6

C. The IPR Proceedings Finding Most Claims Unpatentable but Upholding Three Claims That Require the SMS Limitation. ........ 7

D. CPS Energy Notified Ubiquitous That It Did Not Infringe the SMS Limitation. ........ 8

E. Ubiquitous’ Actions on Remand After This Court Affirmed the Board’s Final Written Decisions. ........ 9

F. Ubiquitous’ Second Amended Complaint Alleges Infringement but Without Any Allegations That the Accused Products Satisfy the SMS Limitation. ........ 10

SUMMARY OF THE ARGUMENT ........ 14

ARGUMENT ........ 17

I. Standard of Review. ........ 17

II. This Court Should Affirm the District Court’s Dismissal Because the Second Amended Complaint Failed to State a Plausible Claim of Patent Infringement. ........ 18

A. The Second Amended Complaint Failed to Plausibly Allege Literal Direct Infringement. ........ 19

B. The Second Amended Complaint Failed to Plausibly Allege Direct Infringement Under the Doctrine of Equivalents. .......... 25

C. Ubiquitous' Inability to Plausibly Allege Direct Infringement Equally Dispatched Its Allegations of Indirect Infringement. .......... 31

III. This Court Should Affirm Because the District Court Did Not Abuse Its Discretion in Dismissing the Second Amended Complaint With Prejudice. .......... 32

A. The District Court Permissibly Found That Ubiquitous Had Every Opportunity to Plead Its Best Case. .......... 33

B. The District Court Permissibly Found That Further Amendment Would Be Futile and Would Prejudice CPS Energy, and That Ubiquitous Failed to Comply with the Local Rules. .......... 35

CONCLUSION .......... 37

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amgen Inc. v. Coherus BioSciences, Inc.*,
931 F.3d 1154 (Fed. Cir. 2019) ....................17, 30

*Aortic Innovations LLC v. Edwards Lifesciences Corp.*,
159 F.4th 1 (Fed. Cir. 2025) ....................26, 27

*Artrip v. Ball Corp.*,
735 F. App'x 708 (Fed. Cir. 2018)....................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................18

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ....................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007)....................18

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) ....................18, 20, 21, 22

*Brewster v. Dretke*,
587 F.3d 764 (5th Cir. 2009) ....................3

*Data Engine Techs. LLC. v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018) ....................30

*Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*,
347 F.3d 1314 (Fed. Cir. 2003) ....................28

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256 (Fed. Cir. 2018) ....................31

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
363 F.3d 1263 (Fed. Cir. 2004) ....................31

*Eagle Pharms., Inc. v. Slayback Pharma LLC*,
382 F. Supp. 3d 341 (D. Del. 2019)....................30, 31

*Eagle Pharms., Inc. v. Slayback Pharma LLC*,
958 F.3d 1171 (Fed. Cir. 2020) ....................30, 31

*Edionwe v. Bailey*,
860 F.3d 287 (5th Cir. 2017) ....................36

*Erickson v. Pardus*,
551 U.S. 89 (2007)....................21

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
535 U.S. 722 (2002) (*Festo VIII*)....................29

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
344 F.3d 1359 (Fed. Cir. 2003) ....................11, 15

*Gentilello v. Rege*,
627 F.3d 540 (5th Cir. 2010) ....................36

*Hilgraeve Corp. v. McAffee Assocs., Inc.*,
224 F.3d 1349 (Fed. Cir. 2000) ....................28

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ....................26

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) ....................23, 31

*New Orleans Ass'n of Cemetery Tour Guides & Co. v. New Orleans Archdiocesan Cemeteries*,
56 F.4th 1026 (5th Cir. 2023) ....................17, 18

*Parish v. Frazier*,
195 F.3d 761 (5th Cir. 1999) ....................17

*Quintanilla v. Tex. Television, Inc.*,
139 F.3d 494 (5th Cir. 1998) ....................18

*Rosenblatt v. United Way of Greater Houston*,
607 F.3d 413 (5th Cir. 2010) ....................35, 36

*Sanderling Mgmt. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023) ....................17

*Scanlan v. Texas A&M Univ.*,
343 F.3d 533(5th Cir. 2003) ....................................................................17

*SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Eur. GmbH*,
839 F.3d 422 (5th Cir. 2016) ....................................................................32, 33

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ....................................................................18

*Smith v. EMC Corp.*,
393 F.3d 590 (5th Cir. 2004) ....................................................................18, 33

*Spectrum Pharms., Inc. v. Sandoz Inc.*,
802 F.3d 1326 (Fed. Cir. 2015) ....................................................................17

*Spiller v. City of Tex. City*,
130 F.3d 162 (5th Cir. 1997) ....................................................................35, 36

*Uniloc USA, Inc. v. ADP, LLC*,
772 F. App'x 890 (Fed. Cir. 2019)....................................................................30

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997)....................................................................28

## STATEMENT OF RELATED CASES

Appellees City of San Antonio, a/k/a CPS Energy, and City Service Board of San Antonio, d/b/a CPS Energy (together "CPS Energy") are unaware of any other appeal in or from the same action or proceeding in the originating tribunal that was previously before this Court or any other appellate court. CPS Energy is also unaware of any case pending in this Court or any other court that will directly affect or be directly affected by this Court's decision in this appeal.

CPS Energy notes that a prior appeal involving one of the appellants (Shamoon) and a patent previously asserted in the underlying district court action (U.S. Patent No. 8,064,935) was before this Court in *Shamoon v. Resideo Technologies, Inc., et al.*, Nos. 2021-1813 and 2021-1814, where this Court affirmed two final written decisions of the Patent Trial and Appeal Board in inter partes review proceedings, where the Board had found certain challenged patent claims unpatentable. *See Shamoon v. Resideo Techs., Inc.*, Nos. 2021-1813, 2021-1814, 2023 WL 5031508 (Fed. Cir. 2023) (nonprecedential). This Court's opinion described the transfer of ownership of the patent from Ubiquitous Connectivity, LP (an appellant in this appeal) to Shamoon (the lead appellant in this appeal). *See id.* at *1. In the underlying case giving rise to this appeal, the district court recounted certain of those events in footnote 1 of Appx1-2.

## STATEMENT OF THE ISSUES

The issues presented by Ubiquitous' appeal are as follows:

1. Did the district court permissibly grant CPS Energy's Rule 12(b)(6) motion to dismiss for failure to state a claim where Ubiquitous' Second Amended Complaint ("SAC") failed to plausibly allege direct or indirect infringement of any asserted claim of the asserted '655 patent by "say[ing] nothing" (Appx8) about the key claim limitation in dispute despite multiple opportunities to do so?

2. Did the district court act within its discretion by denying Ubiquitous leave to amend its complaint a third time and by dismissing the SAC with prejudice after Ubiquitous "had over a year to search for factual support before filing the SAC" (Appx12) and had "already pled their 'best case'" (Appx11)?

## STATEMENT OF THE CASE

This appeal stems from the district court's decision to dismiss with prejudice a case first brought in July 2018. After "over six years" of litigation (Appx1 n.1), and after permitting the plaintiffs to file both a First Amended Complaint and a Second Amended Complaint, the district court denied Appellants Charles Shamoon, Sr. and Ubiquitous Connectivity, LP (together "Ubiquitous") the opportunity to file a Third Amended Complaint attempting yet again to state a viable claim for patent infringement (Appx12).

The Second Amended Complaint ("SAC") at issue here asserted claims 2, 9, and 11 of U.S. Patent No. 9,602,655 (the "'655 patent") against CPS Energy. All three asserted claims depend from claim 1 (with claim 11 depending from claim 10, which in turn depends from claim 1). Base claim 1 includes the core limitation at issue in this appeal: "wherein the cellular remote unit is configured to transmit a notification via a simple message service responsive to determining that the cellular remote unit is outside of the geo-fence" (the "SMS limitation"). Appx679.

As the district court found, at every stage, including most recently in the SAC, Ubiquitous "fail[ed] to provide factual support for how the Accused Products infringe on the SMS Limitation." Appx9. Similarly, under the doctrine of equivalents, Ubiquitous "fail[ed] to provide any factual support besides boilerplate

allegations that the Accused Products infringed 'through the doctrine of equivalents.'" Appx10 (citing Appx154 (SAC ¶ 58)).

The district court denied Ubiquitous leave to amend the complaint a third time because Ubiquitous had "already pled their 'best case.'" Appx11 (citing *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam)). As the court observed, Ubiquitous "had over a year to search for factual support before filing the SAC, and failure to plead their 'best case' at this stage weighs against allowing another opportunity to correct their deficiencies." Appx12. Also, "further delays would prejudice [CPS Energy]," "[a]ny amendment would also be futile," and Ubiquitous failed to comply with a local rule that "require[d] [Ubiquitous] to attach a copy of the proposed amended complaint to their pleading." *Id*. The district court's dismissal was thus fully justified, and the judgment should be affirmed.

## I. The Parties.

Appellee CPS Energy is a city utility in San Antonio, Texas. Appx140-141. The accused products are internet-connected thermostats and associated applications that allow the utility's customers to remotely change temperature settings and participate in programs like conservation events, which help reduce energy demand in peak hours. *E.g.*, Appx89, Appx92-93, Appx99, Appx102-103.

Appellant Ubiquitous Connectivity is a non-practicing entity that has periodically been the assignee of the '655 patent, and related patents, over the past

six years. Appx140, Appx145. Appellant Shamoon is one of the inventors of the ’655 patent, and has also periodically been the assignee of the ’655 patent, and related patents, over the past six years. *Id.* Shamoon first joined this case as an individual plaintiff after counsel for his company, Ubiquitous Connectivity, withdrew their representation. *See* Appx2 n.1. Shamoon then filed a pro se motion to substitute himself as the plaintiff, asserting that Ubiquitous Connectivity had assigned the asserted patent rights to him and that he could therefore proceed alone, without Ubiquitous Connectivity and without counsel. *Id*. Two years later Shamoon reversed course, attempting to withdraw and substitute Ubiquitous Connectivity as the sole plaintiff. *Id.* The district court refused to allow Ubiquitous Connectivity to proceed alone, and therefore both Shamoon and Ubiquitous Connectivity filed the SAC and are parties to this appeal. *Id.*; Appx1978.

## II. Factual Background.

### A. The Prosecution of the ’655 Patent and the Origin of the SMS Limitation.

In the prosecution of the ’655 patent, the Examiner rejected the pending claims—including claim 8, which ultimately issued as claim 1—as anticipated by certain prior art. Appx903, Appx1434-1436. In response, the Applicant attempted to traverse the rejection on the basis that the prior art did “not receive a message which is a command from a remote unit, process the message, and send a control instruction.” Appx1424. Next, the Examiner again rejected certain pending claims,

including claim 8. Appx1401. In response to the rejection, the Applicant amended pending claim 8 and provided arguments focused on the transmission of messages, explaining that the prior art "does not teach or suggest a base unit configured to: 'receive a second message from the remote unit . . . including a command' (wherein 'the command is an enter mode command for the base unit')." Appx1361; Appx1370 (emphasis and paragraph break omitted; alteration in original).

Multiple rejections and amendments followed (*see* Appx1337, Appx1308, Appx1267, Appx1189-1190) until the Applicant proposed new claim 39, which for the first time recited the "SMS limitation" at issue in this appeal:

> 39. (New) The base unit of claim 8, wherein the remote control unit is configured to determine position data of the remote control unit, and determine when the remote control unit is outside a geo-fence, wherein the remote control unit is configured to transmit a notification via a simple message service responsive to determining that the remote control unit is outside of the geo-fence.

Appx1195 (highlighting added). In response, the Examiner once again rejected pending claim 8 as disclosed by the prior art but stated that newly proposed claim 39 (containing the SMS limitation) "would be allowable if rewritten in independent form including all of the limitations of the base claim [*i.e.*, pending claim 8] and any intervening claims." Appx1109. The Applicant then amended pending claim 8 to incorporate the requirements of pending claim 39, including incorporating the SMS limitation, which issued as claim 1 of the '655 patent. Appx937-939. Through these

prosecution history rejections and amendments, issued claim 1—the base claim for each of the claims at issue here—contains the SMS limitation.

### B. Ubiquitous' Original and First Amended Complaints.

Appellant Ubiquitous Connectivity (without Shamoon) originally filed this action in July 2018, asserting both the '655 patent and U.S. Patent No. 8,064,935 (the "'935 patent"). Appx36. Soon after, CPS Energy moved to dismiss the complaint for failure to state a claim for relief, arguing that the asserted patent claims are invalid under 35 U.S.C. § 101. Appx1647. In response, Ubiquitous Connectivity proposed filing an amended complaint to allege that the asserted patent claims are not abstract, and in doing so raised the import of the SMS limitation. Ubiquitous Connectivity alleged that "[a]t least three 'inventive concepts' are embodied in the claims of the Patents-in-Suit at the 'base unit,' including (1) two-way digital communications with a cellular phone, (2) unsolicited event notification with a cellular telephone, and (3) geo-fence based communications within these constructs." Appx1683. The "unsolicited event notification" and "geo-fence based communications" both relate to the SMS limitation.[1] The district court allowed

---

[1] The SMS limitation references both, stating that "the cellular remote unit is configured to transmit a *notification* via a simple message service responsive to determining that the cellular remote unit is outside the *geo-fence*." Appx679.

Ubiquitous Connectivity to file the First Amended Complaint, which it filed in September 2019. Appx1931.

### C. The IPR Proceedings Finding Most Claims Unpatentable but Upholding Three Claims That Require the SMS Limitation.

After Ubiquitous Connectivity filed the original complaint, Resideo Technologies, Inc. and Central Security Group Nationwide, Inc. filed two petitions for inter partes review ("IPR") challenging all asserted claims of both the '655 patent and the '935 patent. Appx2109; Appx685. In October 2019, shortly after Ubiquitous Connectivity filed the First Amended Complaint, the district court granted a joint motion staying the litigation pending resolution of the IPRs. Appx28.

During the IPRs, Ubiquitous Connectivity acknowledged that "simple message service" in claim 1 of the '655 patent means "short message service" or "SMS." Appx693; *see* Blue Br. 24 (stating that "during the course of the IPR proceeding, UC simply acknowledged that the term 'simple message service,' as it appears in Claim 1, was a typographical error that should have been 'short message system' [sic, service] (*i.e.*, SMS)"). And in the Patent Trial and Appeal Board's final written decision for the '655 patent, the Board construed "simple messag[e] service" to mean "short message service" or "SMS," stating that "the '655 patent equates the terms by definition" and that "[n]either party disputes our construction." Appx693.

At the end of the IPR proceedings, the Board found most of the challenged claims unpatentable, upholding only claims 2, 9, and 11 of the '655 patent and claim

12 of the ’935 patent. Appx684-748. Next, Shamoon (without Ubiquitous Connectivity[2]) filed an appeal in this Court—limited to just the ’935 patent, not the ’655 patent. This Court affirmed. *See Shamoon*, 2023 WL 5031508, at *8. Thus, the claims at issue in this appeal are limited to those that survived the IPR proceedings—claims 2, 9, and 11 of the ’655 patent, except not claim 12 of the ’935 patent, which Ubiquitous elected not to pursue.

### D. CPS Energy Notified Ubiquitous That It Did Not Infringe the SMS Limitation.

Following the Board’s final written decisions that narrowed the asserted claims to only those containing the SMS limitation, CPS Energy moved to dismiss the district court litigation for failure to prosecute and failure to comply with the district court’s order that Ubiquitous Connectivity obtain new counsel within the time prescribed by the district court. Appx1963. In the motion, CPS Energy explained that “[e]ach of the few remaining dependent claims require

---

[2] After the Board issued its final written decisions, Ubiquitous Connectivity’s attorneys moved to withdraw as counsel, which Shamoon opposed. Appx28; Appx1952. The court granted the motion and ordered Ubiquitous Connectivity to retain new counsel. Appx29; Appx1956-1957. Rather than do so, Shamoon sought to transfer the patent rights (and the litigation) from Ubiquitous Connectivity to himself personally in order to proceed pro se. Appx2 n.1; Appx145. In December 2022, the court dismissed without prejudice the claims brought by Ubiquitous Connectivity “for failing to obtain counsel, despite this Court’s order to do so.” Appx31 (Dec. 15, 2022 Text Order). The case thus continued with Shamoon as the lone plaintiff until September 2024, when Shamoon and Ubiquitous Connectivity together filed the SAC. Appx32; Appx2017; Appx140.

communications via SMS (text) messages, which Ubiquitous has never alleged and which the accused products do not do." Appx1965; *see also* Appx1966 (explaining that none of the remaining claims "is infringed by the accused products"). Shortly thereafter, in a hearing on the same issue, CPS Energy reiterated that the asserted claims are not infringed. Appx1985, Appx1992.

### E. Ubiquitous' Actions on Remand After This Court Affirmed the Board's Final Written Decisions.

After this Court affirmed the Board's final written decisions, nearly a year passed without action in the district court by Shamoon as to the surviving claims.[3] Then in 2024, the district court requested an update, to which the parties jointly responded. For its part of the response, CPS Energy explained that it "believed that Plaintiff had abandoned the case and had remained silent and inactive after Plaintiff's appeal was final because Plaintiff understood that it could not prove an essential element of the remaining claims—communication via SMS." Appx2012. CPS Energy also explained, once again, that its products could not infringe the claims that remained after the IPRs: "all of the remaining claims of the asserted patents require communication via SMS, which is inapplicable to the products accused of infringement." Appx2010; *see also* Appx2012 ("To the extent that

[3] In the interim, Shamoon reassigned the '655 and '935 patent rights to Ubiquitous Connectivity, which ultimately secured new counsel. *See* Appx145 at ¶ 20.

Plaintiff is permitted to pursue its claims, Defendant CPS Energy reserves all of its rights, including the right to fully recover all of the expense[s], costs, and attorneys' fees it has incurred in defense of Plaintiff's claims.").

For Shamoon's part of the update, he sought leave to file a third version of the complaint—the SAC—and also sought to withdraw himself as the plaintiff and to substitute Ubiquitous Connectivity. Appx2 n.1. In response, the district court "gave Shamoon a choice": either voluntarily dismiss the lawsuit with prejudice or file a Second Amended Complaint adding (not substituting) Ubiquitous Connectivity as a plaintiff and narrowing the asserted claims to just those that survived the IPRs. *Id.*; *see also* Appx32; Appx2017-2019. Shamoon chose the latter option, and Shamoon and Ubiquitous Connectivity jointly filed the SAC. *Id.*

### F. Ubiquitous' Second Amended Complaint Alleges Infringement but Without Any Allegations That the Accused Products Satisfy the SMS Limitation.

Shamoon and Ubiquitous Connectivity (together "Ubiquitous") filed the SAC in September 2024. Appx31; Appx140-155. The SAC asserted infringement of claims 2, 9, and 11 of the '655 patent, each of which depends (directly or indirectly) from claim 1 and thus includes the SMS limitation. Appx145.

The SAC did not allege that any accused CPS Energy product uses or is capable of using SMS. *See generally* Appx140-155. CPS Energy moved to dismiss, explaining that Ubiquitous failed to plead that the accused products meet a required

claim limitation (the SMS limitation) and describing how any further amendment of the complaint would be futile because no facts could possibly be alleged as to the SMS limitation (at least not within the confines of Rule 11 of the Federal Rules of Civil Procedure). Appx175. CPS Energy added that any theory of infringement under the doctrine of equivalents was barred by prosecution history estoppel, because the SMS limitation had been added during prosecution as a narrowing amendment to avoid prior art. Appx187-188; *see Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1366-67 (Fed. Cir. 2003). Ubiquitous opposed the motion but never provided a proposed third amended complaint (as required by the court's local rules) containing allegations that the accused products somehow satisfy the SMS limitation. Appx528-529.

In April 2025, the district court dismissed Ubiquitous' claims with prejudice. Appx12. The court held that Ubiquitous "admit[ted] that the SAC 'does not specifically mention SMS'" (Appx8) and concluded that the SAC failed to plausibly allege infringement of a "key element of Claim 1," which "is that the communication between the remote unit and the base unit is 'transmit[ted] via a simple message service'" (Appx7 (alteration in original)). The court observed that Ubiquitous had "point[ed] to two allegations in the SAC that they contend plausibly show the Accused Products infringe this element [the SMS limitation] of claim 1," but the court "disagreed" that either allegation concerned the SMS limitation. Appx8. The

court found that the first identified allegation "says nothing about the use of 'SMS' to transmit the controls, only that the method of 'control' is accomplished by way of communication between the devices." *Id*. The court continued: "While this 'control' could conceivably be by 'SMS,' the prosecution history of the '655 Patent prevents Plaintiffs from relying on such a broad allegation." *Id*. As to the second identified allegation, the allegation stated merely that the accused products "provide[] users with usage data related to [a] smart thermostats system." Appx9 (first alteration in original). The district court ruled that "Plaintiffs cannot plausibly allege the SMS Limitation by such a broad brush here, given the prosecution history." *Id*.

For similar reasons, the district court addressed Ubiquitous' arguments under the doctrine of equivalents and found that "[t]his too falls short." *Id*. The SAC "fail[ed] to provide any factual support besides boilerplate allegations that the Accused Products infringed 'through the doctrine of equivalents.'" Appx10. The court added that accepting Ubiquitous' position "would require the Court to adopt an already surrendered broader construction to encompass equivalents of some other type of wireless communication" (*id.*) and that "[Ubiquitous] offer[ed] no response to [CPS Energy's] argument that [Ubiquitous] would fail to rebut the presumption of estoppel" (*id.* n.4).

The district court also denied Ubiquitous leave to amend because it "had over a year to search for factual support before filing the SAC, and failure to plead their

'best case' at this stage weighs against allowing another opportunity to correct their deficiencies." Appx12. The district court also found that "[f]urther delays would prejudice [CPS Energy]," and that "[a]ny amendment would also be futile." *Id.* Still further, the court ruled that Ubiquitous failed to comply with a local rule requiring it to attach "a copy of the proposed amended complaint to their pleading." *Id*. Thus, the district court dismissed Ubiquitous' claims with prejudice (Appx12), and a final judgment followed (Appx14).

In a subsequent Order, the district court found the case exceptional and awarded fees to CPS Energy. Appx2020. The district court found that "there is no denying that [Ubiquitous] had notice of non-infringement after litigation resumed in this Court" and that "[Ubiquitous] nonetheless continued to drag [CPS Energy] through litigation." Appx2026. The court also explained that, "[k]nowing they were unable to plead an essential element of the claim, [Ubiquitous] should have recognized that their position was objectively baseless." *Id.*

Throughout this litigation, including this appeal, Ubiquitous has never identified how CPS Energy's accused products meet the SMS limitation in the asserted claims of the '655 patent.

## SUMMARY OF THE ARGUMENT

Over the course of six years of litigation, the district court gave Ubiquitous three opportunities to allege a plausible claim of infringement of the ’655 patent. Before Ubiquitous acted on its third opportunity (via its Second Amended Complaint or “SAC”), CPS Energy had repeatedly informed Ubiquitous that the accused products could not infringe a key claim requirement—the “SMS limitation.” *E.g.*, Appx1965; Appx1984; Appx2026. Despite that express notice, and despite “hav[ing] had over a year to search for factual support before filing the SAC” (Appx12) and “hav[ing] already pled their ‘best case’” (Appx11), the SAC failed to state a plausible claim for relief. The court ruled that “further delays would prejudice [CPS Energy],” “[a]ny amendment would be futile,” and Ubiquitous failed to comply with a local rule requiring it to “attach a copy of the proposed amended complaint.” Appx12. The district court was well justified in dismissing Ubiquitous’ case with prejudice and without further leave to amend. This Court should affirm.

None of Ubiquitous’ allegations conformed to fundamental pleading standards. *First*, the SAC failed to plausibly allege a claim of direct literal infringement. The SMS limitation—a requirement of all asserted claims—requires a cellular remote unit configured to transmit an SMS notification when the unit is outside a geo-fence. Appx168. Ubiquitous admits, however, that “*the SAC does not allege the specific protocol* that may be used to transmit a notification that the

cellular remote [unit] is outside the geo-fence." Blue Br. 21 (emphasis added). Ubiquitous instead argues that "[a] reasonable *inference* to be drawn from the facts alleged in the SAC is that [a] geo-fencing feature transmits a notification," and that "one can reasonably *infer* that such a notification would be transmitted by SMS." *Id.* (emphasis added). These stacked inferences are not enough. The district court found that, despite every opportunity, "[Ubiquitous] fail[ed] to provide factual support for how the Accused Products infringe on the SMS Limitation." Appx9.

*Second*, the SAC sought to allege infringement under the doctrine of equivalents. But as the district court found, "[Ubiquitous] fail[ed] to provide any factual support besides boilerplate allegations that the Accused Products infringed 'through the doctrine of equivalents.'" Appx10 (quoting Appx154 ¶ 58). And even if Ubiquitous had provided fact-based allegations under the doctrine of equivalents, it was estopped from asserting any equivalent because the SMS limitation was added during prosecution to overcome the Examiner's substantive rejections. Ubiquitous never even addressed the estoppel much less rebutted the presumption that it applies. As the district court observed, "[Ubiquitous] offer[ed] no response to [CPS Energy's] argument that [Ubiquitous] would fail to rebut the presumption of estoppel." Appx10 n.4 (citing *Festo*, 344 F.3d at 1368).

*Third*, because Ubiquitous failed to plausibly allege direct infringement, the district court likewise dismissed the allegations of indirect infringement. Appx11. In

alleging indirect infringement, the SAC again supplied no allegations relating to the SMS limitation. And Ubiquitous points to no such allegations on appeal. *See* Blue Br. 25-28. Thus, the district court appropriately dismissed the claims of indirect infringement.

*Fourth*, the district court did not abuse its discretion when denying Ubiquitous a fourth opportunity to plead a plausible claim for infringement. Because Ubiquitous "had over a year to search for factual support" and the opportunity "to plead their 'best case,'" dismissal was warranted. Appx12. And because Ubiquitous never even "hinted at" how the accused products might satisfy the SMS limitation, the court was justified in finding that "[f]urther delays here would prejudice [CPS Energy]" and that any further amendment "would also be futile." Appx12. Those findings, combined with Ubiquitous' failure to comply with the court's local rules (*see id.*) fully justified a dismissal with prejudice and without leave to amend.

# ARGUMENT

## I. Standard of Review.

This Court reviews a district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) under the law of the applicable regional circuit. *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016). The Fifth Circuit reviews challenges to such a dismissal de novo, taking the allegations of the complaint as true. *Id.* (citing *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

"Whether prosecution history estoppel applies, and thus whether the doctrine of equivalents is available for a particular claim limitation, is a question of law reviewed de novo." *Amgen Inc. v. Coherus BioSciences, Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019) (quoting *Spectrum Pharms., Inc. v. Sandoz Inc.*, 802 F.3d 1326, 1337 (Fed. Cir. 2015)).

"When reviewing a district court decision on . . . a motion to amend [a complaint], [this Court] appl[ies] the same standard of review as the applicable regional circuit." *Sanderling Mgmt. v. Snap Inc.*, 65 F.4th 698, 702 (Fed. Cir. 2023). The Fifth Circuit "reviews a denial of a motion for leave to amend a complaint for abuse of discretion." *New Orleans Ass'n of Cemetery Tour Guides & Co. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1034 (5th Cir. 2023) (citing *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999)). "Decisions concerning

motions to amend are 'entrusted to the sound discretion of the district court.'" *Id.* (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998))).

## II. This Court Should Affirm the District Court's Dismissal Because the Second Amended Complaint Failed to State a Plausible Claim of Patent Infringement.

To survive a motion to dismiss, "a complaint must allege enough facts that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *New Orleans Ass'n*, 56 F.4th at 1035 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Under *Iqbal*/*Twombly*, allegations that are 'merely consistent with' infringement are insufficient." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) (quoting *Twombly*, 550 U.S. at 557). Further, to sufficiently plead a claim for patent infringement, it is not enough to provide mere conclusory allegations that an accused product infringes the claims. *See Iqbal*, 556 U.S. at 678-79; *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6).").

Nearly a year passed between this Court's opinion affirming the Board's unpatentability decisions and Ubiquitous' filing of the SAC, during which Ubiquitous was free to search for factual support and plausibly allege infringement of the surviving claims—those requiring the SMS limitation. Despite that ample window, and even with notice from CPS Energy of the weakness of Ubiquitous' case with respect to the SMS limitation, the SAC still failed to allege facts from which a reasonable inference could be drawn that any accused product satisfies the SMS limitation. The district court thus properly dismissed the case.

### A. The Second Amended Complaint Failed to Plausibly Allege Literal Direct Infringement.

Ubiquitous admits that the SAC does not recite any allegation regarding the SMS limitation, stating that "the SAC *does not allege the specific protocol* that may be used to transmit a notification that the cellular remote is outside the geo-fence." Blue Br. 21 (emphasis added). Ubiquitous instead argues that "[a] reasonable *inference* to be drawn from the facts alleged in the SAC is that [the] geo-fencing feature transmits a notification," and that "one can reasonably *infer* that such a notification would be transmitted by SMS." *Id.* (emphasis added). Ubiquitous' inference-upon-inference argument misses the point. The SAC—reflecting Ubiquitous' third attempt to state a claim for patent infringement, after the SMS limitation had been emphasized time and time again—still never set forth any allegation that a notification is sent via SMS. Nor could Ubiquitous have stated such

an allegation because that is not how the accused products work. *See, e.g.*, Appx1965 (emphasizing that "Ubiquitous has never alleged" satisfaction of the SMS limitation, "which the accused products do not do"); Appx2026 (district court: "But there is no denying that [Ubiquitous] had notice of non-infringement after litigation resumed in this Court."). Claim 1 of the '655 patent expressly requires SMS, and not some other protocol, and therefore the SAC failed to state a plausible claim for relief. Appx679.

Because the SAC contains no allegation actually addressing the SMS limitation (or even any allegation that the accused products employ SMS messages at all), Ubiquitous resorts to high-level conclusory statements, such as arguing that "[t]he SAC identifies specific accused systems . . . and alleges that CPS Energy makes, uses, offers to sell, and provides these systems to its customers." Blue Br. 17; *see also id*. at 18 ("The SAC also alleges that the Accused Products satisfy all limitations of at least the asserted claims and directly infringe the '655 Patent under 35 U.S.C. § 271."). These other statements Ubiquitous identifies in the SAC—such as discussing how the accused products enable users to "monitor and control environmental devices remotely through two-way wireless communication and user-initiated commands"—are untethered from the SMS limitation. Ubiquitous' attempts to identify something in the SAC that constitutes an allegation that the accused products satisfy the SMS limitation were insufficient to give CPS Energy

"fair notice of what the . . . claim is and the grounds upon which it rests." *Bot M8*, 4 F.4th at 1353 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

Ubiquitous' next attempt is its argument that the district court "expressly found" that "the pleaded facts 'could conceivably' satisfy" the SMS limitation. Blue Br. 18. That argument does not withstand scrutiny. Ubiquitous' selective quotation omits the key words that precede and follow the "could conceivably" phrase repeated throughout Ubiquitous' principal brief. The district court said:

> [The SAC's] allegation, however, says nothing about the use of 'SMS' to transmit the controls, only that the method of 'control' is accomplished by way of communication between the devices. *While* this 'control' could conceivably be by 'SMS,' *the prosecution history of the '655 Patent prevents Plaintiffs from relying on such a broad allegation*.

Appx8 (emphasis added). The district court expressly rejected Ubiquitous' argument that the SAC's allegation of a "control" could equate to transmitting a notification via any communication between devices (which could include SMS) because such a broad interpretation of "control" would be barred by the prosecution history.

Ubiquitous' failure to address the SMS limitation in the SAC is particularly glaring given the years-long history of this litigation in which the SMS limitation has remained a focal point. In August 2022, CPS Energy explicitly informed Ubiquitous that the SMS limitation could not be met by the accused products. *See* Appx1965. CPS Energy reiterated the point many times, including at the hearing on Shamoon's motion to substitute and again in the parties' Joint Status Report, which

was submitted before Ubiquitous filed the SAC. *See* Appx1984; Appx2010 ("all of the remaining claims of the asserted patents require communication via SMS, which is inapplicable to the products accused of infringement"). In that Joint Status Report, CPS Energy expressed its surprise that Ubiquitous planned to maintain its infringement case given that all remaining claims (those surviving the IPRs) "*require* communication via SMS." Appx2012 (emphasis in original). And the district court found "there is no denying that [Ubiquitous] had notice of non-infringement." Appx2026. Ubiquitous was thus fully on notice of the deficiency of its infringement allegations on the SMS limitation before filing its SAC, yet Ubiquitous still failed to allege that the limitation was met.

As this Court has explained, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Bot M8*, 4 F.4th at 1353. That Ubiquitous' claims survived an initial pleadings-based challenge under § 101 based in part on the SMS limitation, that Ubiquitous admitted to the construction of the SMS limitation during the IPRs, that Ubiquitous "had over a year to search for factual support [for the SMS limitation] before filing the SAC" (Appx12), and that CPS Energy repeatedly informed Ubiquitous that it did not infringe based on the SMS limitation individually and collectively illustrate the materiality of the SMS

limitation. Yet Ubiquitous' SAC fell short, again, resorting instead to conclusory and evasive allegations the district court rightfully found insufficient. In this context, with no allegation directed to the SMS limitation, the SAC failed to give CPS Energy notice of what was accused of infringing. *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

Ubiquitous repeatedly cites this Court's *Nalco* opinion for the proposition that a plaintiff "is not required to plead its claims of patent infringement on an element-by-element basis." *E.g.*, Blue Br. at 15 (citing *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)). But the *Nalco* opinion stands for a different proposition—that the plaintiff "need not prove its case at the pleading stage." *Nalco*, 883 F.3d at 1350 (internal quotation marks omitted). The opinion does not support Ubiquitous' argument that, under *Nalco*, a plaintiff need not allege a key claim element to state a claim for patent infringement. Here, Ubiquitous admits that the SAC never alleged that the accused products satisfy the SMS limitation. Blue Br. 21 (admitting "the SAC does not allege the specific protocol that may be used"). Nor did the district court fault Ubiquitous for failing to meet a formulaic requirement of element-by-element pleading; it faulted Ubiquitous for failing to allege satisfaction of a material claim limitation, even after being put on notice that the accused products do not satisfy the SMS limitation.

Ubiquitous also asserts that the district court misunderstood claim 1. Blue Br. at 18-20. This too falls short, and the argument is a red herring to boot. As the court stated, "a key element of Claim 1 is that the communication between the remote unit and the base unit is 'transmit[ted] via a simple message service." Appx7. This tracks the language of the SMS limitation, which requires that "the cellular remote unit is configured to transmit a notification via a simple message service." Appx679. The core point is that Ubiquitous failed to allege any facts directed to any sort of SMS communication.

Lastly, Ubiquitous argues that the court misunderstood the claims as requiring transmitting controls between the devices. Blue Br. 20. The district court's discussion of whether a "control" could meet the SMS limitation responded to Ubiquitous' argument that the SAC's allegation of a "control" was sufficient to plausibly allege satisfaction of the SMS limitation (an argument raised again in this appeal). Appx8; *see* Blue Br. 16-18 (arguing that the SAC sufficiently pleads direct infringement because it "describes how the accused systems enable users to monitor and control environmental devices remotely through two-way wireless communication and user-initiated commands"). The district court correctly understood that the SAC's broad allegation regarding a "control" was insufficient. When the court faced the same argument in Ubiquitous' motion to amend the judgment, the court put the "control" issue simply: "Even if that is true, it is

immaterial: The fact remains that Plaintiff did not plead sufficient facts to meet the SMS limitation element." Appx18. None of the statements in the SAC allege that *any* messages are sent via SMS, much less that a remote unit is configured to transmit a notification via SMS in response to determining that the remote unit is outside the geo-fence. Under any view, the allegations of the SAC are "insufficient to state a plausible, rather than merely possible, claim for relief." *Artrip v. Ball Corp.*, 735 F. App'x 708, 714 (Fed. Cir. 2018) (nonprecedential) (affirming the dismissal of a third amended complaint which failed to identify any allegedly infringing machines other than by broad functional language). The district court correctly ruled that the SAC failed to plausibly allege a claim of literal direct infringement.

### B. The Second Amended Complaint Failed to Plausibly Allege Direct Infringement Under the Doctrine of Equivalents.

The district court correctly held that the SAC failed to state a claim for infringement under the doctrine of equivalents because Ubiquitous "fail[ed] to provide any factual support besides boilerplate allegations that the Accused Products infringed 'through the doctrine of equivalents.'" Appx10 (quoting Appx154 ¶ 58). The court underscored its ruling by explaining that, based on the prosecution history, Ubiquitous "cannot prevail under the doctrine of equivalents." *Id.* Accepting Ubiquitous' "broader construction" of the SMS limitation "would require the Court to adopt an already-surrendered broader construction to encompass equivalents of some other type of wireless communication" beside SMS. *Id.*

Ubiquitous argues for the first time on appeal that "CPS Energy did not show prosecution history estoppel arising from amendments made by [Ubiquitous] during the prosecution of the '655 Patent." Blue Br. 24. That argument fails for two reasons.

*First*, Ubiquitous never raised the argument to the district court, thus forfeiting it. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) (following the "important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances"). CPS Energy raised the issue of prosecution history estoppel in its motion to dismiss the SAC, arguing that "[p]rosecution history estoppel presumptively applies" and that Ubiquitous "cannot and will not be able to rebut the presumption." Appx187-188. In response, Ubiquitous argued only that the SAC "pled an unchallenged alternative infringement theory that the accused products use of [sic] an equivalent to short message service." Appx525. Ubiquitous never addressed prosecution history estoppel (Appx525-526), and the district court confirmed that Ubiquitous "offer[ed] no response to [CPS Energy's] argument that [Ubiquitous] would fail to rebut the presumption of estoppel" (Appx10 n.4).

Like the defendant in *Aortic Innovations LLC v. Edwards Lifesciences Corp.*, here CPS Energy "preemptively addressed the prospect of an estoppel-based argument." 159 F.4th 1, 10 (Fed. Cir. 2025). In doing so, CPS Energy noted that "[a]side from identifying no equivalent in the [SAC]," Ubiquitous had "completely

ignore[d] that it is estopped from establishing infringement of the SMS limitation under the doctrine of equivalents." Appx544. In response, Ubiquitous still failed to address prosecution history estoppel, or discuss infringement under the doctrine of equivalents, at all. *See* Appx550, Appx552-553. Ubiquitous addressed the issue only in its later motion asking the district court to "reconsider" and "vacate" its Order and final judgment. Appx560; *see* Appx564-567. But "[u]nder these circumstances," this Court should deem Ubiquitous' prosecution history estoppel "argument as not having been raised before the district court and thus forfeited in this appeal." *Aortic*, 159 F.4th at 10.

*Second*, Ubiquitous is incorrect on the merits. As an initial matter, Ubiquitous' new argument relies on a confused mix of two separate legal doctrines—prosecution history disclaimer (which the district court did not apply) and prosecution history estoppel. Blue Br. 22-24. Ubiquitous also confuses the question of the correct construction of the term "simple message service," which is "SMS" or "short message service," with the question of the applicability of prosecution history estoppel to the SMS limitation. These are separate issues. Not only must the claim term "simple message service" mean "short message service" or "SMS," but also Ubiquitous cannot rely on the doctrine of equivalents for that term because of prosecution history estoppel. The limitation arose from a narrowing amendment added during prosecution to overcome the Examiner's rejections based on prior art.

*See, e.g.*, *Hilgraeve Corp. v. McAffee Assocs., Inc*., 224 F.3d 1349, 1355 (Fed. Cir. 2000) ("[P]rosecution history estoppel bars recapture of subject matter surrendered during prosecution.").

Prosecution history estoppel applies when a claim is amended for "a substantial reason related to patentability," including "to avoid the prior art, or otherwise to address a specific concern—such as obviousness—that arguably would have rendered the claimed subject matter unpatentable." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17, 30-33 (1997). During prosecution of the '655 patent, the Examiner rejected pending claim 8 (which issued as claim 1) as disclosed by the prior art but stated that newly proposed claim 39 (which introduced the SMS limitation) "would be allowable if rewritten in independent form including all of the limitations of the base claim [i.e., pending claim 8]." Appx1109. The Applicant did so, thus adding the SMS limitation into claim 8, which issued as claim 1. Appx937-939. That claim narrowing, including deleting the broader original claim in favor of a claim that contains the SMS limitation, gives rise to estoppel. *See Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1326 (Fed. Cir. 2003) ("While Deering argues that it merely rewrote an allowable original claim 3 in independent form, there is no question that the claim was narrowed by the deletion of a broad original claim in favor of a claim that contained the Zero Position Limitation.").

Rather than address this narrowing that occurred during prosecution, Ubiquitous focuses only on the IPR proceeding. But the IPR proceeding confirmed the same point. The district court relied on the Board's IPR "decision that 'simple message service' means 'SMS' [which] *narrows* the element." Appx8-9 (emphasis in original).[4] Thus, the district court continued, "plausibly alleging infringement of this element requires factual allegations pointed to the SMS Limitation itself." Appx9. Ubiquitous' "allegation that the Accused Products allow remote *control*" was thus insufficient to allege that the products transmit *SMS notifications*. *Id.* (emphasis added). Ubiquitous' failure to address the estoppel—which the district court relied on (Appx10 n.4) and which CPS Energy relied on in moving to dismiss (Appx187-188)—is fatal to its arguments on appeal.

Once prosecution history estoppel is established, "the [C]ourt should presume that the patentee surrendered all subject matter between the broader and narrower language," and thus the patentee bears the burden of proving that the equivalent in question was not surrendered. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002). But here, Ubiquitous "offer[ed] no response to [CPS Energy's] argument that [Ubiquitous] would fail to rebut the presumption of

---

[4] In this appeal, Ubiquitous correctly notes that it acknowledged during the IPR that claim 1 contains a "typographical error" where "simple message service" "should have been 'short message system' [sic, service] (*i.e.*, SMS)." Blue Br. 24.

estoppel." Appx10 n.4. Without any rebuttal to the presumption that prosecution history estoppel applies, both at the district court and now on appeal, Ubiquitous' arguments fail on the merits.

Ubiquitous' additional argument that the district court was required to treat the motion to dismiss as one for summary judgment is also incorrect. Blue Br. 24. Whether prosecution history estoppel applies, and thus whether the doctrine of equivalents is available for a particular claim limitation, is regularly addressed on a motion to dismiss. *See, e.g.*, *Amgen*, 931 F.3d at 1159 (affirming the district court's dismissal based on prosecution history estoppel barring the plaintiff's "infringement claim under the doctrine of equivalents"). The only evidence considered by the district court was the SAC and the '655 patent prosecution file history, which is "part of the intrinsic record of the patent and is a 'matter[] of public record.'" *Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 898 n.3 (Fed. Cir. 2019) (quoting *Data Engine Techs. LLC. v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018)). This Court has confirmed that there is "no error in [a] district court's decision to grant judgment of non-infringement on the pleadings" when the only infringement theory was a doctrine of equivalents theory barred by the disclosure-dedication doctrine. *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1177 (Fed. Cir. 2020). There, as here, the "patents themselves provided 'sufficient context to decide a question of

law.'" *Id.* at 1177 (quoting *Eagle Pharms., Inc. v. Slayback Pharma LLC*, 382 F. Supp. 3d 341, 346 (D. Del. 2019)).

In sum, Ubiquitous' forfeiture of this issue is enough to dispose of it, but Ubiquitous' insufficient arguments on the merits—including its continued failure to rebut the presumption of estoppel at every stage—is dispositive. The presumption stands, and Ubiquitous has failed to allege (and could not allege) satisfaction of the SMS limitation under the doctrine of equivalents.

### C. Ubiquitous' Inability to Plausibly Allege Direct Infringement Equally Dispatched Its Allegations of Indirect Infringement.

As the district court ruled, because Ubiquitous failed to adequately plead direct infringement, the SAC also failed to adequately plead indirect infringement. *See* Appx11; *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement."). As the district court noted, "[i]t is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement." Appx11 (quoting *Nalco*, 883 F.3d at 1355). Once the district court dismissed the direct infringement claims in the SAC, it was correct to dismiss the indirect infringement claims as well.

In the SAC, Ubiquitous alleged induced infringement through CPS Energy allegedly "inducing others to make, use, sell, and/or offer for sale the Accused Products . . . and/or by instructing others to combine the Accused Products with other devices in order to create and use one or more of the systems described in Claims 2, 9, and 11 of the '655 Patent." Appx151-152. Similarly, the SAC alleged that CPS Energy allegedly contributorily infringed by "offering to sell and selling the Accused Products, knowing such to be especially made or especially adapted for practicing one or more of the inventions claimed in the '655 Patent" where "[t]he Accused Products are not staple articles or commodities of commerce suitable for substantial non-infringing use." Appx153.

In making these conclusory allegations of indirect infringement, Ubiquitous again supplied no allegations relating to the SMS limitation. And Ubiquitous points to no such allegations on appeal, nor could it. *See* Blue Br. 25-28. Thus, the district court appropriately dismissed the SAC's indirect infringement claims. Appx11.

## III. This Court Should Affirm Because the District Court Did Not Abuse Its Discretion in Dismissing the Second Amended Complaint With Prejudice.

In the Fifth Circuit, the district court has broad discretion to manage its docket, and the decision whether to grant leave to amend a complaint is based on five considerations: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing

party, and 5) futility of the amendment." *SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 428 (5th Cir. 2016) (quoting *Smith*, 393 F.3d at 595). Here, the district court was well within its discretion to deny Ubiquitous a *fourth* bite at the apple (after the original complaint plus two permitted amendments). The district court emphasized that Ubiquitous "had over a year to search for factual support before filing the SAC, and failure to plead their 'best case' at this stage weighs against allowing another opportunity to correct their deficiencies." Appx12. The court also found that additional delays would prejudice CPS Energy, that amendment would be futile, and that Ubiquitous failed to comply with the local rule requiring a copy of the proposed amended complaint. *Id.* For each of those reasons, the district court's dismissal with prejudice, and without leave to amend, was not an abuse of discretion and should be affirmed.

### A. The District Court Permissibly Found That Ubiquitous Had Every Opportunity to Plead Its Best Case.

The district court did not abuse its discretion in finding that Ubiquitous' "failure to plead their 'best case' at this stage weighs against allowing another opportunity to correct their deficiencies." Appx12; *see also* Appx11 ("Leave to amend is not required, however, when plaintiffs have already pled their 'best case.'"). After almost six years of litigation, and explicit warnings from CPS Energy that there was no viable theory of infringement based on the SMS limitation, Ubiquitous now suggests it did not plead its best case in the SAC. But as the district

court found, Ubiquitous never even "hinted at" an explanation for how the accused products might satisfy the SMS limitation, "nor have they explained how further investigation into the Accused Products could unearth this evidence." Appx12.

Granting a plaintiff leave to amend requires a belief that some fact or allegation exists that, if pled, would rectify the deficiencies in the plaintiff's complaint. Here, by comparison, Ubiquitous faced repeated warnings since at least 2022 that the accused products do not and cannot satisfy the SMS limitation. *See, e.g.*, Appx1965; Appx1985, Appx1992; Appx2010; Appx2026. CPS Energy repeated that warning at a hearing, explaining that "[t]he few remaining claims are very clearly not infringed." Appx1985. Two years later, CPS Energy again warned that Ubiquitous "could not prove an essential element of the remaining claims – communication via SMS." Appx2012. CPS Energy also noted it was "surprised when over a year after the Federal Circuit's decision, Plaintiff indicated that it was planning to pursue an allegation of infringement based on the remaining claims of the 935 and 655 patents, all of which require communication via SMS." Appx2012. The district court itself referenced that warning in its Order granting Shamoon leave to file the SAC. Appx2018 (stating that CPS Energy "asserts that . . . if the Court allows Plaintiff to file an amended complaint, Plaintiff's ability to prove essential elements of patent infringement is tenuous at best").

And despite being allowed to address the issue in the SAC, Ubiquitous failed to make any allegation that the "key" SMS limitation was somehow satisfied. Appx7. Simply put, there were and are no facts that Ubiquitous could plead to satisfy the SMS limitation in good faith. Neither CPS Energy nor the district court should be forced to continue to indulge Ubiquitous' persistence with this litigation despite the absence of plausible allegations of infringement.

### B. The District Court Permissibly Found That Further Amendment Would Be Futile and Would Prejudice CPS Energy, and That Ubiquitous Failed to Comply with the Local Rules.

The district court did not abuse its discretion in finding that "[f]urther delays here would prejudice Defendant," and that "[a]ny amendment would also be futile." Appx12. As explained above, before the court's Order dismissing the SAC, CPS Energy had spent nearly six years combating Ubiquitous' allegations, and still—even today—Ubiquitous has "not hinted at any" explanation for how the SMS limitation might be satisfied. Further amendment would have been a fourth operative pleading for Ubiquitous, and would have belabored a case with meritless allegations. The district court was well justified in finding further amendment futile and prejudicial to CPS Energy. *See Rosenblatt v. United Way of Greater Houston*, 607 F.3d 413, 419 (5th Cir. 2010) (the plaintiff's "request *now* to amend, after his case has been dismissed on his now-abandoned conversion claim theory, 'rings hollow in light of h[is] failure to amend h[is] complaint as a matter of right and h[is]

failure to furnish the district court with a proposed amendment' while the motions to dismiss were pending" (emphasis and alterations in original) (quoting *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997)). The district court did not abuse its discretion in finding a third amended complaint futile and prejudicial to CPS Energy.

Still further, the district court noted that Ubiquitous failed to "compl[y] with Local Rule CV-7, which requires Plaintiffs to attach a copy of the proposed amended complaint to their pleading." Appx12. In the Fifth Circuit leave may be denied where, as here, the movant insisted the complaint sufficed to state a claim but "'fail[ed] to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure any deficiencies.'" *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (quoting *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)). By failing to attach a copy of the proposed amended complaint as the local rules required, Ubiquitous deprived the district court and CPS Energy of any opportunity to review its allegedly curative amendments. Without such a proposed pleading, and without any "hint[]" of an explanation for how the SMS limitation could be satisfied by the accused products, the district court acted well within its discretion to dismiss Ubiquitous' SAC with prejudice.

## CONCLUSION

CPS Energy respectfully requests that this Court affirm the district court's judgment dismissing this case with prejudice.

Dated: April 1, 2026

Respectfully Submitted by:

/s/ *Kirk T. Bradley*

Kirk T. Bradley
ALSTON & BIRD LLP
1120 South Tryon Street
Suite 300
Charlotte, NC 28203-6818
Telephone: (704) 444-1000
Facsimile: (704) 444-1935

*Counsel for Defendants-Appellees*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2026-1193

**Short Case Caption:** Shamoon v. City of San Antonio

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 8311 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ______ lines of text.
- [ ] the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 04/01/2026

Signature: /s/ Kirk T. Bradley

Name: Kirk T. Bradley